NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE DIRECT PURCHASER INSULIN PRICING LITIGATION,** | Civil Action No. 20-3426 (ZNQ) (RLS)<br><br>OPINION |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court a Motion for Entry of Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, or in the alternative, Certification of Appeal Pursuant to 28 U.S.C § 1292(b) filed by Direct Purchaser Plaintiffs ("Plaintiffs"). ("Motion", ECF No. 179). Plaintiffs filed a brief in support of their Motion. ("Moving Br.", ECF No. 179-1). All Defendants[1] opposed ("Opp'n Br.", ECF No. 180) and Plaintiffs replied ("Reply Br.", ECF No. 181).

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure[2] 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Plaintiffs' Rule 54(b) Motion and request for Certification pursuant to 28 U.S.C. § 1292(b).

**I.    BACKGROUND**

Plaintiff brought this case as a class action alleging that the pricing and marketing practices of the PBM and Manufacturer Defendants[3] regarding insulin products violated: (1) Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), (2) Section 1 of the Sherman Act, 15 U.S.C. § 1, and

---
[1] All Defendants' names are identified in the Court's July 9, 2021 Opinion. (ECF No. 158.)
[2] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.
[3] PBM and Manufacturer Defendants are identified in the Court's July 9, 2021 Opinion. (ECF No. 158.)

1

(3) the Racketeer Influenced Corrupt Practices, 18 U.S.C. §§ 1962(c) & (d). (*See generally*, Amended Complaint, "Am. Compl.", ECF No. 112.) PBM and Manufacturer Defendants each moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (*See* ECF Nos. 130, 131.) On July 9, 2021, the Court dismissed Plaintiffs' commercial bribery claim under the Robinson-Patman Act, 15 U.S.C. § 13(c) ("RPA") solely on antitrust standing grounds. (*See* ECF No. 158 at 15–16.) The Court also dismissed the Sherman Act, 12 U.S.C. § 1, claim on the grounds that the Complaint failed to allege sufficient facts to infer a conspiracy from Defendant's parallel pricing. (*Id*. at 16–17.) The Court permitted the RICO claim to proceed.

Plaintiffs seek in this application certification pursuant to Fed. R. Civ. P. 54(b) or 28 U.S.C. § 1292(b) of the portion of the Court's order dismissing Plaintiffs' RPA claim.

## II. JURISDICTION

The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

### A. Rule 54(b)

Generally, an Order terminating fewer than all claims or all defendants "does not constitute a 'final' order" required to confer jurisdiction over the matter on a United States Court of Appeal. *Elliott v. Archdiocese of New York*, 682 F.3d 213, 219 (3d. Cir. 2012) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32 (1956)). But, pursuant to Rule 54, "a district court may convert an order adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. § 1291." *Id*. Federal Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claims—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only

> if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

The Supreme Court has set out a two-step process for district courts to follow in making determinations pursuant to Rule 54. First, a "district court must determine that it is dealing with a 'final judgment.'" *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). By final judgment, the Supreme Court means "[i]t must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id*. (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). Upon a finding of finality, "the district court must then determine whether there is 'any just reason for delay.'" *Id*. at 8. An order that "purports to certify a judgment as final under Rule 54(b)" but lacks this express determination about the "just reason for delay" prong required by the Rule will deprive a court of appeal of jurisdiction "because it is not a 'final' judgment under either Rule 54(b) or under the traditional standards of 28 U.S.C. § 1291." *Archdiocese of New York*, 682 F.3d at 221.

The burden rests with the moving party to overcome the normal rule that "no appeal be heard until the entire case is completed." *Wärtsilä NSD North America, Inc. v. Hill International, Inc.*, Civ. No. 99–4565, 2004 WL 7339760, at *2 (D.N.J. 2004) (citing *In re National Smelting of New Jersey, Inc. Bondholders Litig.*, 695 F. Supp. 796, 797 (D.N.J. 1988)).

### B. 28 U.S.C. § 1292(b)

As noted above, a matter may not be appealed to the Third Circuit until a final judgment has been rendered. An interlocutory appeal, however, may be proper in "exceptional cases" where forgoing the normal procedure of appealing after final judgment is appropriate. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). Thus, under § 1292(b), the Court may exercise its discretion in

certifying an order for interlocutory appeal if the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014). But even if all three criteria are met, certification is not mandatory, rather, it is "wholly discretionary." *Juice 6 Ent., LLC v. Live Nation Ent., Inc.*, 353 F. Supp. 3d 309, 312 (D.N.J. 2018) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 358 (D.N.J. 2001)). The burden to demonstrate that certification is proper lies with the moving party. *Kapossy v. McGraw-Hill Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996). And, importantly, "[i]n evaluating these factors, '[a] motion [for certification] should not be granted merely because a party disagrees with the ruling of the district judge.'" *Id.* (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983)).

## IV.   DISCUSSION

### A.   Rule 54(b)

On July 9, 2021, the Court dismissed Counts One through Three of the Amended Complaint without prejudice. (*See* ECF No. 159.) Plaintiffs argue that certification for appeal is appropriate under Rule 54(b). (Moving Br. at 5.)

Plaintiffs assert that the RPA claim is separable from the RICO claims remaining in the litigation and from the dismissed Sherman Act claim. (*Id.* at 8.) Plaintiffs contend that proving their RICO case will require the development of a substantial record distinct from the one necessary to prove the RPA claim. (*Id.*) Plaintiffs argue that given that they do not intend to seek reconsideration of the Court's RPA standing decision, Plaintiffs cannot currently envision any future developments that would moot the need for review. (*Id.* at 10.) Plaintiffs further maintain

that because the antitrust standing question is a purely legal one, an appellate resolution of the question will be final and there is no reason to expect that the Third Circuit would need to revisit the issue. (*Id*. At 11.) Plaintiffs assert that Rule 54(b) certification would serve both the interests of sound judicial administration and public policy as well as the more parochial interests of the parties. (Id.)

In opposition, Defendants argue the Court should deny Plaintiff's request for entry of a final judgment under Rule 54(b) because Plaintiff's RPA cause of action is not a separate and distinct claim from the surviving RICO claim. (Opp'n Br. at 8.) Defendants contend that Plaintiff's RPA count rests on the same factual predicate as their surviving RICO counts. (*Id*. at 1.)

In reply, Plaintiffs reiterate that their RPA claim is distinct from the RICO claim. (Reply Br. at 13.) Plaintiffs argue that they must prove a "host of additional facts" in support of their RICO claim compared to their RPA claim. (*Id*. at 14.) Plaintiffs contend that although the RICO and RPA claims "have some overlap," liability is not based on the same transaction or series of transactions. (*Id*.)

For purposes of Rule 54(b), the first question is whether the judgment entered was "final." Finality is defined by the requirements of 28 U.S.C. § 1291, which are generally described as ending "the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

The Supreme Court cautions that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id*. Indeed, final-judgment certification under Rule 54(b) is the exception, not the rule,

5

to the usual course of proceedings in a district court. *Archdiocese of New York*, 682 F.3d at 220. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. *Id*. The guiding principle for district courts to consider is "the interest of sound judicial administration." *Id*.

The Third Circuit has held that the "classic definition of a 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Eisai Inc. v. Zurich American Ins. Co.*, Civ. No. 12-7208, 2015 WL 113372, at *4 (D.N.J. Jan. 8, 2015) (citing *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 460 F. 3d 470, 476 (3d Cir. 2006) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)). This finality requirement "is often described as serving 'the important purpose of promoting efficient judicial administration.'" *Weber v. McGrogan*, 939 F. 3d 232, 236 (3d. Cir. 2019) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).

"[T]he question of what constitutes a 'claim' for purposes of Rule 54(b) is nowhere precisely defined." *Kapossy,* 942 F. Supp. at 999 (citing *Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150 (3d Cir. 1990)). There are, however, some guideposts. *Rosedale v. Township of Reading*, Civ. No. 19-16428, 2021 WL 1627086, at *2 (D.N.J. Feb. 23, 202). A claim is generally eligible for Rule 54(b) certification if it reaches the "requisite degree of finality as to an individual claim in a multiclaim action." *Sussex*, 920 F.2d at 1154. Alternatively, "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief" for the purposes of Rule 54(b)." *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976). Similarly, the following scenarios do not qualify for Rule 54(b) certification: "[a]lternative theories of recovery based on the same factual situation" *Allegheny County Sanitary Auth. v. EPA*, 732 F.2d 1167, 1172 (3d Cir. 1984); "[a]n order that eliminates two

6

of several elements [ ] flowing from a single claim" *Marino v. Nevitt,* 311 F.2d 406, 408 (3d Cir. 1963); and partial adjudication of a claim. *Sussex*, 920 F.2d at 1154. Stated differently, "a single set of interrelated facts, even though it supports several causes of action, will usually constitute only a single 'claim.'" *Kapossy*, 942 F. Supp. at 999.

Here, the Amended Complaint concerns "the marketing, pricing, sale and distribution of . . . long-acting analog insulin[]" drugs for the treatment and management of diabetes. (ECF No. 158 (quoting Am. Compl.¶ 2).) The alleged bribery and kickback scheme is detailed in paragraphs 88–119 of the Amended Complaint. These allegations are fully incorporated into both the RPA and RICO causes of action in Counts One, Four, and Five. (*See* Am. Compl. ¶¶ 190, 223, 279.) Further, Plaintiffs claim the alleged bribes and kickbacks led to their injuries in Counts One, Four and Five. (*See id.* ¶¶ 194, 271, 284(a).) Additionally, the damages Plaintiffs seek to recover are identical: Plaintiffs' alleged overpayment due to the existence of the bribery and kickback scheme. (*Id*. ¶¶ 195, 198, 276, 285.) Plaintiffs' RPA and RICO causes of action, therefore, rely on the same factual circumstances. *See Allegheny County Sanitary Auth.,* 732 F.2d at 1172. Alternative theories of recovery based on the same factual situation is insufficient for Rule 54(b). Accordingly, Plaintiffs have failed to overcome the burden to demonstrate a final judgment under Rule 54(b). *See Wärtsilä NSD N. Am., Inc.,* 2004 WL 7339760, at *2.

**B.     28 U.S.C. § 1292(b)**

Plaintiffs alternatively seek to certify the order dismissing their RPA cause of action under 28 U.S.C. § 1292(b). The Court considers each factor required for certification below.

1. <u>Controlling Question of Law</u>

"A question is controlling if an incorrect disposition would constitute reversible error and . . . it is serious to the conduct of the litigation, either practically or legal[ly].'" *Kaplan*, 2014 WL 4678059, at *2 (alteration in original) (quoting *Eisenberger v. Chesapeake Appalachia*, LLC, Civ.

7

No. 09-1415, 2010 WL 1816646, at *3 (M.D. Pa. May 5, 2010)). "Courts in this district have held that although a question appears to be a controlling question of law, questions about a district court's application of facts of the case to established legal standards are not controlling questions of law for purposes of section 1292(b)." *Juice Ent.*, 353 F. Supp. 3d at 312–13 (quoting *Morgan v. Ford Motor Co.*, Civ. No. 06-1080, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007)). Legal questions in which "the district court's discretion is necessarily intertwined with its understanding of the facts" do not fall within the purview of § 1292(b). *Kapossy*, 942 F. Supp. at 1002.

Plaintiffs maintain the Court's Order dismissing their RPA claims for lack of standing is a "controlling one" because it resulted in dismissal of the entire claim asserted in the Complaint. (Moving Br. at 16.) The Court agrees. The Court's July 8, 2021 Order dismissed Plaintiffs' commercial bribery claim under the RPA. (ECF No. 158 at 15–16.) If incorrect, such a disposition would result in reversible error. Accordingly, the Court finds the July 8, 2021 Order involves a controlling question of law.

        2.        Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion is not created merely because a party has a differing opinion from that of the district judge. *Kapossy,* 942 F. Supp. at 1001 (citation omitted). Instead, substantial ground for difference of opinion lies where "there is genuine doubt or conflicting precedent as to the correct legal standard." *Korrow v. Aaron's, Inc.*, No. 10-6317, 2016 WL 4083219, at *2 (D.N.J. July 29, 2016) (citation omitted). Notably, a "question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion." *Cosimano v. Township of Union*, Civ. No. 10-5710, 2017 WL 4790381, at *2 (D.N.J. Oct. 23, 2017) (citation omitted).

Plaintiffs argue that there is genuine doubt as to the correct legal standard because the Court's July 8, 2021 Order necessarily carves out an exception to the *Illinois Brick*[4] direct purchaser rule. (Moving Br. at 17.) Plaintiffs contend that no other federal court has recognized such an exception. (*Id*.) Plaintiffs argue that the Court's decision that paying inflated purchasing prices to vendors is not the type of injury antitrust laws were intended to prevent is in direct conflict with the entire body of law that affords direct purchasers standing to litigate antitrust violation claims. (*Id*. at 17–18.)

In opposition, Defendants contend that in dismissing Plaintiff's RPA claim, it relied upon the Third Circuit's binding and applicable decision in *2660 Woodley Road Joint Venture v. ITT Sheraton Corp,* 369 F.3d 732 (3d Cir. 2004) ("*2600 Woodley Road*"). (Opp'n Br. at 21.) Defendants contend that the Court correctly relied upon the Third Circuit's holding in *2660 Woodley Road* that paying inflated purchasing prices to vendors, without more, is not the type of injury the RPA was intended to prevent. (*Id*. at 22.) Defendants maintain that the Court's ruling is a direct application of binding Third Circuit precedent that precludes any argument that there is a substantial ground for difference of opinion. (*Id*. at 23.)

In reply, Plaintiffs assert that Defendants' purported "black letter" standing rule does not exist. (Reply Br. at 3.) Plaintiffs contend that the Court of Appeals renounced such a rigid rule. (*Id*.)

The Court dismissed Plaintiffs' commercial bribery cause of action because Plaintiffs failed to plead facts to support an antitrust injury or antitrust standing. (ECF No. 158 at 17.) The Court found that Third Circuit has "made it abundantly clear . . . that a cognizable antitrust injury is a necessary precursor to antitrust standing, regardless of whether other [*2600 Woodley Road*]

---

[4] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)

factors support such a finding." *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 230 (3d Cir. 2010). The Third Circuit in *McCullough* found that the plaintiffs failed to plead a redressable antitrust injury because they were neither competitors nor consumers in the pertinent market. (*Id*.) Similarly, here, the Court found competitors of the PBM and Manufacturer Defendants, as well as the health benefit plan clients and their insured, make up these potential victims, not wholesalers like Plaintiffs. The fact that Plaintiffs disagree with the Court's application of the facts in the record to this well-settled legal standard is insufficient to find "substantial ground for difference of opinion."

### 3. Potential to Materially Advance the Ultimate Termination of Litigation

An interlocutory appeal materially advances litigation if it (1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly. *Juice Ent*., 353 F. Supp. 3d at 314 (quotation marks and citations omitted).

"The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law," as an interlocutory appeal could save litigants' money and the Court's time by potentially speeding up litigation. *Pub. Interest Rsch. Grp. of N.J., Inc.* v. *Hercules, Inc*., 830 F. Supp. 1549, 1557 (D.N.J. 1993) (citation and internal quotations omitted).

As the Court explained herein, Plaintiffs' RICO and RPA causes of action rely on the same alleged kickback and bribery scheme. An interlocutory appeal of the Court's July 8, 2021 Order will therefore not eliminate issues to make discovery easier and less costly because the discovery in both counts is related to the same kickback and bribery scheme. Further, the appeal would not eliminate the need for trial, nor eliminate complex issues so as to simplify the trial, because, again, the Counts are related to the same kickback and bribery scheme.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motion will be DENIED. An appropriate Order will follow.

Date: **May 12, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
